**This order is SIGNED.**



**Dated: February 1, 2017**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>WATERFORD FUNDING, LLC, *et al.*,<br><br>Debtors. | Bankruptcy Case No. 09-22584<br>Chapter 11<br>(Substantively Consolidated) |
| GIL A. MILLER, as Chapter 11 Trustee for Waterford Funding, LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>JOHN STONE,<br><br>Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 11-2093 |

### MEMORANDUM DECISION

The Court has two matters before it. The first is a motion filed by Jaimie Baker *dba* Baker Recovery Services (BRS), an assignee of a judgment obtained against Defendant John Stone, to substitute as the plaintiff in the above-captioned adversary proceeding. The second is a motion filed by Gil A. Miller, the Chapter 11 Trustee (Trustee) of the Debtors' substantively consolidated bankruptcy cases and the Plaintiff in the above-captioned adversary proceeding. The latter motion seeks to approve a settlement of the adversary proceeding with Mr. Stone.

After considering the filings relevant to these two motions, after considering the oral arguments of the parties, and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), made applicable to this proceeding through Federal Rules of Bankruptcy Procedure 9014(c) and 7052.[1]

## I. JURISDICTION

The Court's jurisdiction over this case and adversary proceeding is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). These matters are core proceedings within the definition of 28 U.S.C. § 157(b)(2)(A) & (H), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

## II. BACKGROUND

The Trustee commenced this adversary proceeding on January 5, 2011, seeking to avoid and recover alleged pre-petition fraudulent transfers made to Mr. Stone in the total amount of $106,426.27. The Trustee obtained a default judgment in that amount against the Defendant and subsequently assigned the judgment to BRS in October 2015. The assignment agreement specifically provided:

> For cash consideration to be received from the Buyer upon execution of this Agreement (the "Purchase Price")[,] the Trustee hereby sells, transfers, assigns or otherwise conveys all title, rights, ownership and interests in the aforementioned Judgments to Baker Recovery Services ("Buyer").
> The Trustee assigns and authorizes Buyer to recover, compromise, settle (in full or in part) and/or enforce the Judgments at its sole discretion. In so doing, the Buyer has all rights of the Trustee and may notify the Judgment Debtors that satisfaction of the Judgments must be made through Buyer.

---

[1] Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

. . . .
The sale and assignment of the Judgments to the Buyer is "As Is Where Is" with no representations and warranties of any kind, other than that the Trustee is the holder of the Judgments and has the authority to transfer the Judgments as provided for herein.[2]

On February 8, 2016 the Defendant filed a motion to set aside the default judgment, which BRS opposed. After receiving briefing and conducting two hearings on the motion, the Court granted the motion and set aside the default judgment.[3] On August 8, 2016 BRS filed an amended complaint against Mr. Stone. Although the amended complaint omitted three claims for relief that the Trustee had asserted in the original complaint—including two claims under 11 U.S.C. § 548[4]—the two documents were substantially similar, with the amended complaint repeating much of the language and structure of its predecessor. One significant change, however, was that Mr. Baker substituted "BRS" for "the Trustee" at many points in the amended complaint, such that BRS appeared to be the plaintiff in the adversary proceeding.[5] Mr. Baker made clear in the amended complaint that he believed that BRS became "the real party in interest with standing to prosecute this action" through the assignment agreement it executed with the Trustee.[6] Mr. Stone filed a motion to dismiss the amended complaint, arguing, among other things, that BRS "was merely an assignee" of the judgment against him and lacked standing to bring this lawsuit.[7]

---

[2] Docket No. 14, Agreement and Notice of Agreement for Sale and Assignment of Judgments, ¶¶ 7-8, 12. Unless otherwise indicated, citations to docket numbers are to those in Adv. Pro. No. 11-2093.

[3] Docket No. 34, Order Vacating Default Judgment.

[4] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

[5] *See, e.g.*, Docket No. 38, First Amended Complaint, ¶ 21 ("The Fraudulent Transfers are avoidable by BRS under section 544(b) and Utah Code Ann. § 25-6-5(1)(a)."). Mr. Baker also changed the caption of the amended complaint to list BRS as the plaintiff.

[6] *See id.* at 2 n.3.

[7] Docket No. 39, Reply Memorandum to Dismiss First Amended Complaint and Summons in an

The Court conducted a hearing on the motion to dismiss on October 25, 2016, where Mr. Stone raised the issue that BRS had not taken the procedural steps necessary to formally substitute for the Trustee as the plaintiff in the adversary proceeding. In response, BRS filed a motion to substitute as the plaintiff pursuant to Rule 25. BRS argued that substitution was proper because it became the "real party in interest in this litigation" through the assignment agreement.[8] Mr. Stone filed an objection to the motion wherein he raised the argument that BRS could not pursue the Trustee's fraudulent transfer claim.[9]

While Mr. Stone's motion to dismiss was pending, the Trustee filed a motion to approve a settlement of the adversary proceeding with Mr. Stone. The Trustee believed that he had the ability to settle with Mr. Stone because "the claims alleged in the Adversary Proceeding reverted back to the Trustee and the Debtors' estate" when the Court set aside the default judgment.[10] The Trustee acknowledged that Mr. Baker "believes he is the owner of the claims asserted in the Adversary Proceeding"[11] and that "there is a dispute as to whether the Trustee or Baker holds the claims asserted in the Adversary Proceeding."[12] BRS filed an objection to the settlement, arguing that the Trustee lacked standing to settle the claims because he sold them to BRS through the assignment agreement.

---

Adversary Proceeding, at 2-3.
[8] Docket No. 46, Baker Recovery Services' Notice of Motion and Motion to Substitute Plaintiff, at 5.
[9] *See* Docket No. 49, Objection to Motion to Substitute Plaintiff, at 4.
[10] Docket No. 2331 in Case No. 09-22584, Chapter 11 Trustee's Motion to Approve Settlement Agreement with John Stone Under Federal Rule of Bankruptcy Procedure 9019, ¶ 10.
[11] *Id.*
[12] *Id.* at 6.

4

### III. DISCUSSION

The issue at the crux of the parties' dispute is who holds the claims asserted in this adversary proceeding. Answering this question would determine which party controls how to prosecute those claims and, consequently, whether Mr. Stone would face a settlement agreement from the Trustee or an amended complaint from BRS. This inquiry would involve asking what the Trustee intended to assign to BRS: Was it the judgment alone or were the underlying claims included? But the Court does not need to answer that question because even if the Trustee intended to assign the underlying claims, he was legally precluded from doing so.

The underlying claims in this case consist of nine claims which, with one exception, seek to avoid and recover alleged pre-petition fraudulent transfers made to Mr. Stone.[13] Courts are split on the issue of whether trustees can assign their rights and powers to avoid and recover fraudulent transfers,[14] but the majority of courts have held that such rights are not assignable.[15] It is true that parties are not absolutely barred from maintaining a lawsuit under the avoidance provisions of chapter 5 of title 11. Courts have allowed parties to exercise a trustee's avoidance powers in certain limited circumstances, such as pursuant to a chapter 11 plan under § 1123(b)(3)(B),[16] or when a creditor is granted derivative standing to pursue avoidance actions

---

[13] The one exception is the seventh claim for relief, which seeks to disallow under § 502(d) any claim Mr. Stone has against the estate unless he has repaid the amount of the transfers. Of the remaining eight claims, two assert causes of action under § 548, three under § 544(b), and one under § 550 and 551. The final two claims assert causes of action for constructive trust and unjust enrichment. Although these are not statutory causes of action under the Bankruptcy Code, the Trustee asserted them on behalf of the estate.

[14] *In re Clements Mfg. Liquidation Co.*, 558 B.R. 187, 188 (Bankr. E.D. Mich. 2016) (collecting cases).

[15] *See Hyman v. Harrold (In re Harrold)*, 296 B.R. 868, 872-73 (Bankr. M.D. Fla. 2003) (collecting cases holding that a creditor cannot exercise a chapter 7 trustee's avoidance powers).

[16] *E.g.*, *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1328 (10th Cir. 1989) ("[T]o the extent that § 1123(b)(3)(B) authorizes the bankruptcy court to appoint 'a representative of the estate for that purpose,' it alters the rule recited in [cases predating the

that a trustee or debtor in possession has refused to prosecute.[17] But these circumstances are not present in this case and are distinguishable from an outright sale of avoidance claims.[18]

The principal reason why courts generally limit avoidance powers to trustees appears to be the statutory language of the Code.[19] Sections such as 544, 547, and 548 confer those powers on trustees, omitting any mention of designees or assigns.[20] Policy considerations also counsel against the assignment of avoidance powers. In cases where the assignee is a creditor, "[i]t is feared that by allowing one creditor to buy a claim from the trustee and pursue that claim on his own behalf, that creditor may be allowed to recover more of the estate's assets than would otherwise rightfully be due to that creditor."[21] In addition, courts also express a concern that permitting parties other than trustees to pursue avoidance actions could expose the legal system to a multiplicity of lawsuits filed by many different individual plaintiffs.[22] This outcome would

---

enactment of § 1123(b)(3)(B)] that an avoidance claim may be pursued only by the trustee or the debtor in possession.").

[17] *See In re Dzierzawski*, 518 B.R. 415, 417-19 (Bankr. E.D. Mich. 2014) (listing the requirements necessary to obtain derivative standing under Sixth Circuit law).

[18] *In re Dinoto*, --- B.R. ----, No. 14-59127, 2016 WL 7655140, at *2 (Bankr. E.D. Mich. Nov. 15, 2016) ("The assignment of state-law based fraudulent transfer claims . . . should not be confused with the bankruptcy court granting a creditor or group of creditors 'derivative standing' to pursue a fraudulent transfer claim on behalf of the bankruptcy estate.").

[19] *See Rockstone Capital, LLC v. Walker-Thomas Furniture Co. (In re Smith)*, No. 04-01581, 2006 WL 1234965, at *4 (Bankr. D.D.C. Feb. 27, 2006) ("[O]ther courts have refused to recognize *any* set of circumstances under which an individual creditor might sue to recover a fraudulent transfer on the grounds that any such exception would be contrary to congressional intent as expressed in the plain language of the statute.").

[20] *See Surf N Sun Apts., Inc. v. Dempsey*, 253 B.R. 490, 492 (M.D. Fla. 1999) ("Although Congress, through section 548, expressly granted standing to the trustee to bring such actions, it said nothing about granting creditors, debtors or anyone else the equivalent power.").

[21] *McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.)*, 210 B.R. 27, 33 (N.D.N.Y. 1997); *see also In re Sweetwater*, 884 F.2d at 1328 ("[P]ost-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike; one or more similarly situated creditors should not be able to pursue an avoidance action for their exclusive benefit.").

[22] *See In re Harrold*, 296 B.R. at 873.

6

likely increase the burden on the federal courts and run counter to the policy that favors "the orderly administration of the bankruptcy estate" through the appointment of a chapter 7 trustee.[23]

For these reasons, the Court holds that even if the Trustee had intended to transfer the underlying claims to BRS through the assignment agreement, he could not have done so. At most, the Trustee assigned the judgment to BRS. Once that judgment was set aside, BRS lacked standing to prosecute any of the underlying claims.[24] Consequently, BRS cannot substitute for the Trustee as the plaintiff in the adversary proceeding. By contrast, the Trustee still holds those claims and has standing to prosecute them, which includes the authority to settle them.

In reviewing a proposed settlement, a "court need only determine that the settlement does not fall below the lowest point in the range of reasonableness."[25] That assessment includes consideration of the four *Kopexa* factors: "[1] the probable success of the underlying litigation on the merits, [2] the possible difficulty in collection of a judgment, [3] the complexity and expense of the litigation, and [4] the interests of creditors in deference to their reasonable views."[26] The Trustee's proposed settlement of the adversary proceeding with Mr. Stone contemplates a mutual release of claims and a $2,500 one-time payment from Mr. Stone to the Trustee. After considering the Trustee's motion to approve the settlement agreement and its analysis of the *Kopexa* factors as applied to the settlement agreement, the Court concludes that the settlement is fair, equitable, and in the best interests of the estate.

---

[23] *See id.*
[24] As a result, BRS could not assert those claims in the amended complaint.
[25] *In re Brutsche*, 500 B.R. 62, 70-71 (Bankr. D.N.M. 2013) (citation and internal quotation marks omitted).
[26] *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).

## IV. CONCLUSION

BRS lacks standing to assert the underlying claims in this adversary proceeding, and its motion to substitute as the plaintiff will be denied. The Trustee has standing to assert those claims, however, and its motion to approve a settlement agreement with Mr. Stone will be granted. Separate orders will be issued in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Mary Margaret Hunt         hunt.peggy@dorsey.com, long.candy@dorsey.com
Paul Justensen             justensen.paul@dorsey.com
Nathan Seim                seim.nathan@dorsey.com, ventrello.ashley@dorsey.com
Reid Tateoka               reidt@mbt-law.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Jaimie Baker
DBA Baker Recovery Services
1535 E. 17th Street, Suite 106
Santa Ana, CA 92705